## Welch et al. *versus* Emerson.

By articles of agreement, W. agreed with E. to sell to him a tract of land for $800, of which sum $300 were to be paid on a day certain, and the balance in yearly payments, with interest. The agreement also provided that if E. failed to make the payments W. should take possession of the premises and sell the same, upon giving notice to E. of twenty-four hours. E. entered and held possession of the land but never made any of the payments, alleging as a reason therefor that there were liens on the land which should first be discharged. After the expiration of the time for the final payment and when the liens were all discharged, M., the grantee of W., served notice of twenty-four hours on E., that he thereby took possession of the land and that the second day thereafter, on the premises, at a stated hour, would expose the same for sale. In pursuance of this notice M. sent his agent to the premises, who remained thereon about fifteen minutes, during which time he sold the land to another person, and then being ordered off by E. left with the purchaser, E. remaining in undisturbed possession. The purchaser then brought ejectment against E. to recover the land. Upon a special verdict, in which the jury found that there had been a mere going upon the premises, the court directed judgment to be entered for the plaintiff, to be set aside and entered for defendant if the latter paid the purchase-money with interest within thirty days: *Held*, that defendant was entitled to this conditional verdict as his equity was not extinguished by the entry and sale: *Held, further*, that the mere going upon the premises and a sale in pursuance of the notice was not a taking possession according to the terms of the contract.

June 21st 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas of *McKean county:* Of May Term 1880, No. 98.

Ejectment brought in April 1879 by George K. Welch and A. I. Wilcox against Enos Emerson, to recover a tract of land in McKean county.

The material facts were as follows: On the 3d of November 1872 J. M. Welch sold a lot of land containing forty acres to Enos Emerson, by articles of agreement. The purchase-money was $800. No part of this sum was paid in hand, but the sum of $300 was to be paid on the first day of the following April, and as

[Welch *v.* Emerson.]

a further security for this sum a judgment note was given therefor, payable on the 1st day of April 1873.

At the foot of the articles of agreement was the following stipulation : "And the said E. Emerson further covenants and agrees that in case of failure to make the payments aforesaid at the times hereinbefore stipulated with the interest and taxes, then the party of the first part shall have the right and privilege to take possession of the premises and sell the same to any other person on a notice being given to the said E. Emerson of twenty-four hours."

On the 2d of December 1873, J. M. Welch conveyed to George M. Welch a number of tracts of land in McKean county, including the lot in controversy.  George M. Welch continued to hold the title to this lot until February 1879, when the proceedings, out of which the question in this case arose, were had.  Emerson went into possession and remained in possession, but never paid anything.  In September 1873, a judgment was entered against him upon the note given to secure the first payment, and a writ of fi. fa. was issued.  The proceedings on this writ were stayed by the court on the petition of Emerson setting out that there were judgments against J. M. Welch which were liens upon the land to an amount exceeding the purchase-money.  At the same time F. W. Knox, Esq., for Emerson, offered to pay the entire sum due on the contract if the liens could be discharged and a deed obtained.  From September 1873 to March 1878, matters continued in much the same condition, but on the 9th of March 1878 the liens having meantime been discharged by payment by George M. Welch, or by lapse of time, Welch caused a deed to be tendered to Emerson and made a demand for the purchase-money.  Nothing was paid, however, and on the 17th of February 1879 Welch caused a notice to be served upon Emerson setting out that he took possession under the terms of the contract and would proceed to sell the premises on the 19th of February at 9 o'clock A. M.

On that day at 9 o'clock A. M., Boyer, the agent of George M. Welch and A. I. Wilcox drove to the barn on the premises and there the agent offered the lot for sale and sold it to Wilcox, agent for George K. Welch, for the sum of $1200.  They then left.  No effort was made to take actual possession of the lot.  When Wilcox and Boyer drove to the barn on the morning of the 19th, Emerson came out and ordered them off.  George K. Welch, the purchaser, then brought this suit.  At the trial the court directed the jury to find a special verdict, which set forth the foregoing facts and reserved the following question :

"If the court be of opinion upon these facts that a mere going upon the premises in pursuance of such notice is a sufficient taking possession by the vendee under the contract, that it was made by the proper person and at the proper time to enable the vendor to extinguish the vendee's equity, then we find for the plaintiffs the

[Welch *v.* Emerson.]

land described in the writ. If the court be of the opinion that such entry was not a sufficient taking of such possession, or that it was not made by the proper person or at the proper time, then we find for the plaintiffs the land described in the writ to be set aside and entered for the defendant on the payment of the sum of $1086.40 within thirty days from the entry of judgment hereon."

The court subsequently entered judgment for the plaintiff to be set aside and entered for the defendant upon payment made by the latter within thirty days, as provided in the special verdict.

Williams, P. J., after a recital of the above facts, delivered an opinion, saying : " The question raised by the special verdict is, whether the plaintiff shall recover according to the terms of the contract of November 3d 1872 a verdict for the possession, to be released on payment of the purchase-money, or adversely and absolutely. This depends upon the construction to be given to the clause in the contract under which this proceeding was had and the effect of what was done on the premises on the 17th and 19th days of February 1879. The contract of November 3d 1872, was a contract of sale which vested an equitable title to the land described therein in Emerson, the vendee. He went into possession under this contract. Now, the law provides two well-defined methods by which such an equity may be extinguished. An action of ejectment to compel specific execution of the agreement and a sale by the sheriff upon a judgment obtained for the purchase-money. But the parties to this contract sought to provide still another method and one that might be made use of by the vendor himself without the necessity of recourse to the machinery of the courts. They accordingly provided, in express terms, that on failure by the vendee to make the payments, the vendor should ' have the right and privilege to take possession of the premises and sell the same to any other person on a notice given to the said Emerson of twenty-four hours.' Upon failure by the vendee to make the payments, the vendor then had an election of remedies. He might proceed upon his contract in the courts, or he might proceed by his own act to ' take possession of the premises.' If he chose his remedy at law, the law would extinguish the equity of the vendee and put him back into possession. If he chose the remedy provided for his own enforcement, he could retake the possession and so extinguish the vendee's equity. Being in possession and holding the title he might, of course, sell, and ' to any other person,' just as he could have sold if this contract had never been made. But so summary a mode of extinguishing the equity is relieved against by the provision that this proceeding should be had only ' on a notice being given to the said Emerson of twenty-four hours.' Of what is Emerson to have this notice of ' twenty-four hours ?' the plaintiff says. Of the time and place of sale. But suppose the vendor does not choose to sell. Having exercised his ' right and privilege to take possession of the

[Welch *v.* Emerson.]

premises,' he may choose to remain in possession and occupy them himself. Holding the legal title he enters upon the land and ousts the holder of the equity in accordance with the provisions of the contract. He thereby becomes the holder of the equity which his vendee acquired under the contract. The legal and equitable titles are united in him and the vendee's equity is extinguished. Having thus the title and the possesion he may never sell—the land may descend to his heirs like any other land held in fee simple.

" We think it more reasonable to construe this clause as requiring a twenty-four hours' notice of the intent to adopt this remedy. The vendee is in possession—he has not paid the purchase-money —the vendor elects to take the money provided by this clause in the contract. He must give his vendee twenty-four hours' notice that he intends to ' take possession of the premises ' and so oust him and extinguish his equity. If within the twenty-four hours the vendee pays the purchase-money, the right of the vendor to ' take possession of the premises ' is gone and the title of the vendee saved. If he does not pay the purchase-money, his days of grace are gone and the vendor may come and ' take possession of the premises ' and so end the contract and the equitable title created by it. But suppose the notice to be served in accordance with our construction of the contract, what must the vendor do in order to entitle himself to the benefit of this remedy ? We reply in the language of the contract, he must ' take possession of the premises.' A mere going on the land for a few moments is not enough. The ' possession of the premises ' must be taken by the vendor—it must be an actual, visible possession—an ouster of the vendee. But, it is argued, such a construction of this contract puts it in the power of the vendee to defeat his vendor by a successful resistance of the effort to take possession. What effect forcible resistance to an actual effort to ' take possession of the premises ' might have upon the rights of the vendor it is not now necessary to determine. The special verdict finds that the plaintiff made an entry merely upon the premises. The evidence showed that he drove upon the land near the barn, and after a few moments drove away again. No effort was made to take actual possession, and without such an effort forcibly resisted the question suggested is not raised.

" The real position of the plaintiff is, after all, this : That the entry upon the premises and sale made by Boyer to Wilcox, as agent of the plaintiff, Welch, extinguished Emerson's equity, though he was left in actual possession. The equity being thus extinguished, the action of ejectment is brought to obtain the possession, and the plaintiff insists that the defendant cannot reply his contract in defence of his possession, because the rights acquired under it were divested by the entry and sale.

" The reply to this seems to be that the contract provided for no such means of divesting the vendee's title. The words of this

[Welch *v* Emerson.]

clause, ' shall have the right and privilege to take possession of the premises,' contemplated an actual taking of possession. The vendee did not agree that an entry upon any part of the premises should divest his title, nor that upon notice that the possessson was wanted or claimed by the vendor, his right to the possession should be at an end. He did agree, however, that if he failed to pay the vendor need not wait for the law to give him back the possession, but might come and take it. That such stipulations are capable of enforcement, when it can be done without a breach of the peace, has been frequently held. Such in effect is the holding in Rich *v.* Keyser, 4 P. F. Smith 86, and Overdeer *v.* Lewis, 1 W. & S. 90. If it can not be done without a breach of the peace, by reason of the vendee's resistance, the remedy is probably by action upon the covenant to recover damages for its breach, as in any other case of breach of covenant: Rich *v.* Keyser, *supra.* But our question does not reach the case of forcible resistance. It is, in substance, whether an entry upon land of which the defendant remains in the peaceable and undisputed possession, is a ' taking of possession of the premises' in accordance with the terms of the contract of 3d of November 1872. We have sufficiently indicated the construction which we put upon the contract, and our opinion that the vendor did not avail himself of his ' right and privilege to take possession of the premises.' It then follows that the vendee, being called upon by this action of ejectment to defend his possession, may do so under the contract of sale. We should be glad to see our way clear, under all the facts surrounding this case, to a different conclusion, but we cannot. Judgment will, therefore, be entered on the conditional verdict, and the payments made within thirty days from the day of filing this opinion will be held to be a compliance with the terms of the special verdict."

The plaintiffs then took this writ and alleged that the court erred in this action.

*A. G. Olmstead, C. B. Curtis, J. R. Clark* and *C. H. Noyes,* for plaintiffs in error.—No question is made that what was done was done at the proper time, by the proper person and after proper notice; the sole question is whether that which was done was sufficient to extinguish the defendant's equity. This depends upon the proper construction and effect of the clause in the agreement. Keeping in view the situation of the parties and the rights of each under the contract, it is evident that their meaning in this clause was simply this : That if Emerson neglected or refused to make the payments, &c., as agreed, and continued to neglect and refuse to pay the same for twenty-four hours after notice from Welch, then Welch should have again the same rights which he had in the land before the contract, that is to say, the right of possession, and the right to sell to whom he pleased. This would leave no

right or equity in Emerson after the twenty-four ·hours' notice. His " equity," if it may be so called, would be extinguished. The effect would be the same as though the parties had said in their contract that in such case the contract should be totally rescinded.

When the vendee permitted the time to pass without making payment, his equity expired, because he had so agreed : Stone *v.* Sprague, 20 Barb. (N. Y.) 509. Where specific performance is demanded by one who is himself in default, it is a matter of equitable discretion : Miller *v.* Henlen, 1 P. F. Smith 265. The right to take possession, without more, is, perhaps, not inconsistent with the vendee's equity. The vendor has this right after default by the vendee, without any special agreement, and in case he exercises it the vendee may still tender payment and demand performance. It may be doubted whether possession obtained under this clause in the agreement would extinguish· the vendee's equity : Youst *v.* Martin, 3 S. & R. 432. But the right to sell to any other person is plainly inconsistent with any equity in the vendee. Its exercise implies a complete termination of the vendee's rights.

*Berry & Elliott, N. B. Smiley, David Sterrett* and *Wm. M. Boggs,* for defendant in error.—The clause in the contract provided a method, without legal process, by which the equitable estate of Emerson might be extinguished in the event of his default in making the payments at the times stipulated. In order, however, to divest his title under this provision it was necessary that everything thereby required to be done by the vendor be performed with exactness. As we read·this power, the first thing the vendor was to do, was to give Emerson twenty-four hours' notice of his intention to take possession, the evident purpose of such requirement being to allow the vendee that time to pay the purchase-money and save his title. If a proper notice had been given, the vendor is required by the contract, if he desires to terminate the vendee's title, to enter and take actual possession of the premises, turning the vendee out. The mere going upon the land without disturbing or attempting to disturb Emerson, who was in the occupancy thereof, could not be such taking of possession as contemplated by the contract.

It will not be contended that giving notice of an intention to perform an act is equivalent to performance of the act itself. Neither the vendor nor his assignee had the right in February 1879, to take possession of the land and sell the same under the provision in the contract for that purpose. It is a power which the vendor had the right to exercise at the time when the payments fell due, and no notice having been given of the. vendor's intention to exercise such right until nearly a year after the last

[Welch v. Emerson.]

payment fell due, the vendor thereby waived his right to proceed under that provision in the contract.

Chief Justice SHARSWOOD delivered the opinion of the Court, October 4th 1880.

We concur in opinion with the learned judge in the court below that upon the special finding of the jury the equity of the defendant was not extinguished, and that he was entitled to a conditional verdict in his favor. The vendor undertook, it would seem, to provide a summary remedy for himself, and he must not be disappointed if he is required strictly to pursue the course prescribed. The jury have found that there was a mere going upon the premises and a sale, in pursuance of the notice. Surely this was not a " taking possession" according to the terms of the contract.

But really the clause in the article gave the vendor no right or remedy which he did not possess without it. It is hornbook law that the legal owner can take possession if he can do so without a breach of the peace. If an action of trespass is brought against him he can justify under the plea of *liberum tenementum*. He cannot be dispossessed by an ejectment except by some one suing on a better title. If it be as in this instance a vendor who has regained possession peaceably, his vendee can eject him only by showing that he has paid the purchase-money and has a right to call for a conveyance. What was there in the clause of the article in question to show that it was intended by the parties that the equity of the vendee should be entirely extinguished and gone ? Nobody doubts that the vendor could maintain ejectment on his legal title without any formal entry or taking possession. The learned counsel for the plaintiff in error very candidly concedes that it may be doubted whether possession obtained under this clause in the agreement would extinguish the vendee's equity. There can be no doubt that if the vendor had recovered in ejectment and been placed in possession by the sheriff, the equity of the vendee would not be affected. He would still have a right to recover back the possession upon tender or payment of the whole purchase-money, unless a conditional verdict taking the place of a decree in equity had limited a time for the payment. The recovery in ejectment by the mortgagee certainly does not foreclose the mortgage and extinguish the equity of redemption. Neither does the recovery by the vendor. But the learned counsel contend that the right after taking possession to sell to any other person is plainly inconsistent with any equity in the vendee. Why so ? The article does not expressly say nor necessarily imply that the sale shall be discharged of the equity, and ought we to import such a provision into the contract without some word on which to found it ? We have seen that the bare agreement that he should take possession gave the vendor no right he did not possess without it ;

14 NORRIS—17

[Welch *v.* Emerson.]

why then should the agreement that he might sell to any other be construed to give him any power which he did not possess before ? He might without it have sold his legal title.    What is there in the contract which says he shall do more ?    The purchaser took with notice of the defendant's equity, and of course subject to it.

                                             Judgment affirmed.